UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 98-2518-CIV-T-24A

**UNDERSEA BREATHING SYSTEMS,
INC.**, a Nevada corporation,

       Plaintiff,

v.

**RON MULLER and NITROX TECHNOLOGIES,
INC.**, a corporation,

       Defendants.
_____/

**SUPPLEMENTAL AFFIDAVIT
OF WILLIAM H. DELP, II**

State of Florida    :
                           : ss
County of Palm Beach:

    I William H. Delp, II, having first appeared before the undersigned officer who is duly authorized to administer oaths in the State of Florida did depose and say:

    1.   I am the President of Plaintiff Undersea Breathing Systems, Inc. ("UBS") and make this affidavit on my personal knowledge.

    2.   Prior to the issuance of U.S. Patent 5,846,291 on December 8, 1998, I personally investigated whether Defendant

Nitrox Technologies, Inc. ("NTI") was continuing to offer for sale its system for generating oxygen-enriched air, and conducted a similar investigation after the patent issued. In both instances, I determined the system being offered for sale by NTI was consistent with the NTI system described below, and which system and its operation infringes at least Claims 1 and 8 of the patent.

3. During the period between January 13-16, 1999, I attended an industry trade show at the New Orleans Convention Center in New Orleans, Louisiana. While at this trade show, I personally observed that NTI had a booth where it was displaying and offering for sale the NTI system for generating oxygen-enriched air which UBS asserts infringes U.S. Patent 5,846,291.

4. I personally inspected the NTI system being displayed at the New Orleans trade show, and observed that the NTI system was being offered for sale for use with a conventional air supply, pressure regulator and compressor normally installed in a dive shop or other compressed air facility of the type which caters to recreational SCUBA divers. I specifically observed that the NTI system on display at the New Orleans trade show contained the following features:

- a heat exchanger for adjusting the temperature of pressure regulated air;
- a permeable membrane gas separation system capable of separating nitrogen, the separation system

having an inlet for receiving temperature adjusted pressure regulated air and two outlets, one for exiting nitrogen gas and the other one for oxygen-enriched air;

- a device for detecting oxygen concentration in the oxygen-enriched air exiting the permeable membrane gas separation system; and

- a controller for controlling operation of the permeable membrane gas separation system, in order to control the oxygen content of the oxygen-enriched air exiting the permeable membrane gas separation system.

5. When the NTI system being displayed and offered for sale at the New Orleans trade show is installed with a conventional air supply, pressure regulator and compressor in a dive shop or other air supply facility, then the NTI system includes all of the features recited in Claim 8 of U.S. Patent 5,846,291.

6. Further, based upon my experience with the NTI system, I am aware that the operation of the NTI system together with the conventional air supply, pressure regulator and compressor which must be located in a dive shop or air supply facility for use with the NTI system would necessarily be capable of performing every step recited in Claim 1 of U.S. Patent 5,846,291. Indeed, NTI's system for generating oxygen-enriched air is specifically made and

adapted for use with a conventional air supply, pressure regulator and compressor installed in a dive shop, and has no substantial utility apart for use in combination with that conventional equipment found in a dive shop. While a small number of dive shops and air supply facilities use low pressure air supplies, the large majority use a high pressure air supply. All such installations must necessarily use a regulator on the input side and a compressor on the outlet in order to produce and compress the oxygen-enriched air.

7. I have received a copy of the original and amended answer, affirmative defenses and counterclaims of NTI, where at ¶25 NTI makes the following statement:

> Defendant NTI has ceased shipping any further units of its accused apparatus and has suspended promotion of the accused damages (sic)...[1].

However, I have received a copy of a letter dated January 29, 1999 sent by NTI to a prospective customer, a copy of which is appended as Attachment A. As shown in that letter, NTI is clearly promoting

---

[1] It is believed that NTI's counsel intended the word "damages" to instead be --apparatus--.

4

ubs-010.Aff

the sale of its infringing system for installation with a conventional air supply, regulator and compressor system.

FURTHER AFFIANT SAYETH NOT.

Feb 3, 99
Date

WILLIAM H. DELP, II

Subscribed and sworn to before me this 3 day of February, 1999.

Notary Public
My commission expires:

GERALDINE L. SPYKER
MY COMMISSION # CC 579321
EXPIRES: September 28, 2000
Bonded Thru Notary Public Underwriters

✓ Personally known to me.

___ Provided the following identification:

5

uba-010.Aff

j.rauwers

Van: Buddy Dive Resorts <diveshop@buddydive.com>
Aan: j.rauwers@wxs.nl
Onderwerp: Fw: The never ending saga
Datum: zaterdag 30 januari 1999 16:19

-----Original Message-----
From: Bob Olson <info@nitroxtech.com <mailto:info@nitroxtech.com>>
To: Bart <diveshop@buddydive.com <mailto:diveshop@buddydive.com>>
Date: Friday, January 29, 1999 6:50 PM
Subject: The never ending saga

Bart,
We are very frustrated that we once again have to waste everyone's time on this but we understand the concern of your boss. This is the specific intent of Mr Delp at Undersea Breathing Systems (UBS), to undermine the confidence of our clients in our ability to sell and deliver our product. Rather than compete with us on the merits and quality of his products, Mr Delp chooses to use the United States Court system to harass and intimidate our clients and suppliers. Unfortunately anyone can bring a lawsuit against another party whether there is just cause or not. We are taking strong offensive action through the courts to stop these unjustified lawsuits and harassment once and for all.
Here is a quick history:
We were sued by UBS in March of 1997 for patent infringement on the first UBS patent and were strongly ruled non infringing by the US Federal Court in November 1997. UBS then appealed the judgment (just before DEMA!) and then suspiciously withdrew the appeal just before the court was to hear the case (after DEMA!) In December 8, 1998, UBS obtained a patent which is basically the continuation of the first patent on which we had already been ruled non infringing. On December 16, we were sued on the new patent (just before DEMA! - see a pattern here?).
The new patent specifically states that the feed air pressure is from high pressure air source (i.e. 600 psig or more). We have not sold a system utilizing high pressure feed air since May of 1996 as we do not believe it to be efficient or cost effective. And as of the issuance of the latest patent, we have not offered for sale any system utilizing high pressure air.
If UBS had performed the infringement analysis required by law, they and their attorney's would have realized this fact and would have probably reconsidered bringing this lawsuit. In fact, Tom Mount of IANTD was also sued under the same patent. He has one of our systems in his facility for training purposes. He uses low pressure air to feed the system. When the UBS attorney examined the system and saw it was fed by low pressure air, just as your will be, he had to admit that this NTI system did not infringe the patent. The lawsuit was dismissed.
The final point is that this is a U.S. patent enforceable in the U.S. only. Your system will be in Bonaire and out of U.S. territory before this matter ever goes to court. The system is ready to ship on Monday and <u>we are not under any court order not to sell or ship product anywhere in the world</u>.
We have spoken with Rob Harris about this matter as well and he is ready to move forward as soon as possible
Please have your boss contact me directly should he have any more questions or concerns.
Sincerely,
Cynthia Olson

Pagina 1

ATTACHMENT A